Filed 8/14/20  P. v. Castro CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B300154 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA118463) |
| v. | |
| ROBERTO VERDUGO CASTRO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Christopher G. Sanchez, Deputy Attorney General, for Plaintiff and Respondent.

_____

Roberto Verdugo Castro challenges his conviction under Vehicle Code section 2800.2.  He argues there was insufficient evidence he drove with willful or wanton disregard for the safety of persons or property while fleeing pursuing police officers.  We affirm.

I

A jury convicted Castro of eight crimes.  Castro challenges his conviction for felony evading.  We summarize the facts leading to this conviction.

On June 20, 2018, two Los Angeles deputy sheriffs drove a marked police car during a routine patrol.  They saw Castro drive a blue car with paper plates over a double yellow line into oncoming traffic.  Castro then ran a red light and nearly hit a van.  He crossed back over the double yellow line and made a high-speed turn.

The officers turned on the red lights on top of the patrol car to make a traffic stop.  Castro did not stop.  He made another turn and accelerated.  He drove at about 50 miles per hour, which was faster than the flow of traffic.  He drove onto the center median to pass other cars.  The officers then turned on all their lights and sirens, but Castro continued to drive at a high speed.

The officers lost sight of Castro after he turned onto another street.  They pulled onto the street and saw Castro had crashed into a brick wall.  There was major damage to the front of the car and the airbags had deployed.  The windows were broken.

The distance from where the officers first turned on the red lights to where Castro's car crashed was about three quarters of a mile.  The officers got behind Castro's car and detained Castro at

gunpoint. As the officers approached him, Castro spontaneously stated he had a gun in the car, the car was stolen, and he was only 18 years old. The officers ordered Castro to get out of the car. Castro complied, and crawled out the back window.

One officer searched the car and found a black semiautomatic handgun and a loaded magazine. A records check confirmed Castro did not own the car.

The other officer interviewed Castro in the patrol car. Castro was grinding his teeth and sweating profusely, his pupils were unusually small, and he estimated 10 seconds to be 30 seconds. Castro told the officer he had used methamphetamine within the last two hours.

An amended information charged Castro with eight crimes. After a three-day trial, the jury convicted Castro of kidnapping to commit robbery (Pen. Code, § 209, subd. (b)(1)); robbery (Pen. Code, § 211); criminal threats (Pen. Code, § 422, subd. (a)); attempted burglary (Pen. Code, § 664/459); evading a pursuing police officer (Veh. Code, § 2800.2); driving a vehicle without consent (Veh. Code, § 10851, subd. (a)); and armed criminal action (Pen. Code, § 25800, subd. (a)). The jury also found four firearm enhancements true.

The trial court imposed a total sentence of life with the possibility of parole plus 25 years.

Castro appealed, challenging only his conviction for evading pursuing police officers under Vehicle Code section 2800.2.

## II

Substantial evidence supported Castro's conviction for fleeing pursuing police officers with willful or wanton disregard for the safety of persons or property.

3

We review the record in the light most favorable to the People to determine whether a rational jury could find the elements of the crime beyond a reasonable doubt. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) We accept all evidence supporting the judgment, disregard contrary evidence, and draw reasonable inferences supporting the verdict. (*Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213–214.) The standard of review is the same when the People primarily rely on circumstantial evidence. (*People v. Brady* (2010) 50 Cal.4th 547, 561.)

A person commits felony evading under Vehicle Code section 2800.2 when the person flees or attempts to evade a pursuing peace officer in violation of Vehicle Code section 2800.1 and drives with willful or wanton disregard for the safety of persons or property. (Veh. Code, § 2800.2, subd. (a).) A violation of Vehicle Code section 2800.1 occurs when, among other things, the police officer's car has "at least one lighted red lamp visible from the front" that the defendant sees or reasonably should have seen, and the car siren is on as "reasonably necessary." (Veh. Code, § 2800.1, subds. (a)(1) & (2).)

One way the People can prove willful or wanton disregard for safety is to show the defendant made at least three traffic violations or damaged property. (Veh. Code, § 2800.2, subd. (b).) The statute specifies evidence of willful or wanton disregard for safety "is not limited to" those examples. (*Ibid.*) The People also can prove willful or wanton disregard for safety by showing the defendant drove with the mental state required for reckless driving under Vehicle Code section 23103. (*People v. Taylor* (2018) 19 Cal.App.5th 1195, 1203.) "Wantonness" in the context of Vehicle Code section 2800.2 includes consciousness of one's

4

conduct, intent to do the act in question, realization of probable injury to another, and reckless disregard of consequences. (*People v. Weddington* (2016) 246 Cal.App.4th 468, 486.) The trial court in this case instructed the jury with CALCRIM No. 2181: "A person acts with *wanton disregard for safety* when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, (2) [and] he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage." This definition is identical to that in the jury instructions for reckless driving under Vehicle Code section 23103. (See CALCRIM No. 2200.)

Castro argues the evidence at trial did not support the "wanton disregard" element. He argues the officers saw him commit several traffic violations *before* turning on their red lights, but did not see any traffic violations after activating all the lights and sirens. He notes the officers "briefly lost sight of [Castro's] car but then found the car had crashed into a brick wall by a driveway" and could not have testified about what caused the crash because they did not see it happen. Because the officers "did not note any specific risk to personal safety or property" after they turned on the lights and sirens and "did not see the crash occur," Castro claims there was insufficient evidence he drove with wanton disregard for the safety of persons or property.

These arguments err. The fact the officers did not see Castro commit traffic violations after they turned on the lights and sirens did not preclude a finding of wanton disregard for safety. Castro damaged property while fleeing from police officers—who pursued him with all their lights and sirens activated—when he drove into a brick wall. The car "sustained

5

very bad damage" and the windows were broken. Castro thus drove with wanton disregard for the safety of persons or property under Vehicle Code section 2800.2, subdivision (b). The fact the officers did not see Castro crash into the brick wall is irrelevant. Castro drove "at a high rate of speed" as the officers pursued him. Castro concedes the officers only "briefly lost sight of the car but then found the car had crashed into a brick wall by a driveway." There was no evidence anything else caused the crash besides Castro's attempt to flee from the officers. It was rational for the jury to find he drove with wanton disregard for safety.

Further, Vehicle Code section 2800.2 expressly does not limit the evidence to traffic violations or property damage. (Veh. Code, § 2800.2, subd. (b).) Evidence also includes driving with the mental state required for reckless driving. (*People v. Taylor*, *supra*, 19 Cal.App.5th at p. 1203.) As the trial court instructed the jury, Castro acted with wanton disregard for safety if he was aware his actions presented a substantial and unjustifiable risk of harm and he intentionally ignored that risk. (See CALCRIM No. 2181.)

Ample evidence showed Castro was aware his actions presented a substantial and unjustifiable risk of harm and he intentionally ignored that risk. After the officers turned on the red lights on top of the patrol car to make a traffic stop, Castro "accelerated at a high rate of speed and continued to fail to yield." He drove faster than the flow of traffic onto the center median to pass other cars. The officers pursued him and activated all their lights and sirens, but Castro continued to drive at a high speed. The officers followed Castro onto another street and saw he had crashed into a brick wall. Castro appeared intoxicated and admitted using methamphetamine within the last two hours.

The jury reasonably could infer Castro drove recklessly, and with wanton disregard for safety.  (See *De Young v. Haywood* (1956) 139 Cal.App.2d 16, 19 [jurors are familiar with the basic traffic safety rules, which describe practices that have long been recognized throughout the country].)

Castro cites *People v. Acevedo* (2003) 105 Cal.App.4th 195 for the proposition the People failed to prove an essential element of his conviction.  In that case, the Court of Appeal reversed a Vehicle Code section 2800.2 conviction because there was insufficient evidence the officer activated a red light on the patrol car, as the prosecution "failed to close a sizable evidentiary gap mandated by the terms of the statute."  (*Id.* at pp. 199–200.) There was no evidentiary gap here.  The jury made no logical leaps in finding Castro fled pursuing police officers with willful or wanton disregard for the safety of persons or property.

## DISPOSITION

The judgment is affirmed.


WILEY, J.


We concur:



BIGELOW, P. J.




GRIMES, J.